# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# GAINESVILLE DIVISION

GRAHAM CULLIFORD,

    Plaintiff,

v.

AMERICAN KIKO GOAT
ASSOCIATION, *et al.*,

    Defendants.

CIVIL ACTION NO.
2:10-CV-112-RWS

## **ORDER**

This case comes before the Court on Defendant Mia Nelson's Motion to Dismiss [61] and Defendant American Kiko Goat Association ("AKGA") and Karen Brown's Motion for Order Directing Plaintiff to Cease Contact with the AKGA [68]. After a review of the record, the Court enters the following order.

## **I. Brief Factual Summary**

This case arises out of the registration of kiko goat pedigrees. Plaintiff Graham Culliford alleges, *inter alia*, that Defendant American Kiko Goat Association ("AKGA") allowed fraudulent kiko goats–Batten Goatex goats–to be registered with the AKGA in violation of its contract with him. Additionally, relevant to these motions, Plaintiff alleges that Defendant Mia Nelson–as an

agent for Defendant Batten–published defamatory statements about him on Batten's website at www.caprinex.com and fabricated Goatex registry certificates, posting them on the caprinex website. Dkt. Nos. [1, 5] at ¶¶ 285-302, 333-351, 400-442. Plaintiff has brought four counts against Nelson: Count V (fraudulent misrepresentation), Count VIII (passing off), and Counts XII and XIII (defamation). Nelson has moved to dismiss the claims against her for lack of personal jurisdiction, and the AKGA seeks an order from this Court to prevent Plaintiff from contacting its Board Members in light of Plaintiff's legal training.

## **II. Motion to Dismiss**[1]

Nelson moves to dismiss the claims against her for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears

---

[1]Plaintiff alleges that Nelson's motion should be barred by estoppel and laches as she answered his complaint, responded to his motion for better particulars, and her counsel filed a leave of absence. Thus, he argues, she should not be able to challenge personal jurisdiction now via a 12(b)(2) motion. However, Nelson raised personal jurisdiction as a defense in her answer and did not file a pre-answer motion. Thus, she did not waive the defense. See FED. R. CIV. P. 12(h)(1) (stating that a 12(b)(2) defense is only waived when the defendant does not file a pre-answer motion on that ground or does not "include it in a responsive pleading"). And, as discovery is still ongoing, Plaintiff was not prejudiced by the delay.

2

the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009). "Where, as here, the defendant challenges jurisdiction by submitting affidavit evidence in support of its position, 'the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.' " Id. (quoting Meier ex rel. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002)). "Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." Meier, 288 F.3d at 1269.

When a federal court sits in diversity, it properly may exercise personal jurisdiction over the defendant "only if two requirements are met: (1) the state long-arm statute, and (2) the Due Process Clause of the Fourteenth Amendment." Posner v. Essex Ins. Co., 178 F.3d 1209, 1214 (11th Cir. 1999). Thus, the Court uses a "two-step inquiry in determining whether the exercise of personal jurisdiction over a non-resident defendant is proper." Internet Solutions Corp. v. Marshall, 557 F.3d 1293, 1295 (11th Cir. 2009). First, courts must consider whether the exercise of personal jurisdiction of the

3

defendant would comport with Georgia's long-arm statute. Id. If so, courts then consider whether the defendant has sufficient minimum contacts with the state such that the exercise of jurisdiction would not offend Due Process notions of "fair play and substantial justice." Id. (citation omitted).

Under the Georgia long-arm statute, "A court of this state may exercise personal jurisdiction over any nonresident . . . as to a cause of action arising from any of the acts . . . enumerated in this Code section, in the same manner as if he or she were a resident of this state, if in person or though an agent, he or she:

(1) Transacts any business within this state;

(2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act; [or]

(3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state . . . .[2]

---

[2] The other provisions of this code section, §§ 9-10-91(4)-(6), are not relevant to this action as they pertain to ownership of real property (sub-section (4)) and to domestic relations (subsections (5) and (6)).

AO 72A
(Rev.8/82)

O.C.G.A. § 9-10-91 (emphasis added). While never explicitly stated, it appears that Plaintiff asserts personal jurisdiction under both subsections (1) and (3).[3]

A. Subsection (1)

Specific jurisdiction exists under subsection (1)–the "transacting business" prong of the long-arm statute–if "(1) the nonresident defendant has purposefully done some act or consummated some transaction in [Georgia], (2) the cause of action arises from or is connected with such act or transaction, and (3) the exercise of jurisdiction . . . does not offend traditional fairness and substantial justice." Aero Toy Store, LLC v. Grieves, 631 S.E.2d 734, 737 (Ga. Ct. App. 2006). The Eleventh Circuit has stated that the first prong of the three-part inquiry satisfies the "transacting business" requirement of the long arm statute and the second and third prongs satisfy federal due process–the "transacting business" inquiry is no longer collapsed into the federal due process inquiry. Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc., 593 F.3d 1249, 1260 n.11 (11th Cir. 2010).

---

[3] As well, Plaintiff has neither alleged nor produced any evidence that Nelson committed a tort within this state, beyond the fact that defamation is specifically excluded from this subsection. Thus, even if attempted, Plaintiff could not proceed under the second subsection.

5

As to the transacting business requirement, Defendant affirms that she has never transacted business in Georgia. Dkt. No. [61] at 17. In response, Plaintiff has attached an e-mail that was posted in a kiko goat chat-room. This e-mail is signed by "Paul" and states that the recipients could "contact Mia Nelson at lookout point ranch [sic] or check out her web site [sic] for inventory of semen and embryos from NZ and Garrick Batten the founder of the kiko." Dkt. No. [65-1] at 3. This evidence, Plaintiff argues, proves that Plaintiff proffered goat semen for sale in Georgia. However, this document does not state who it was sent to or those recipients' residencies. Thus, there is no evidence that any transactions with Georgia residents took place as a result of this e-mail, and there is no evidence that this e-mail was even sent to Georgia residents in the first place.

Presumably to deal with this issue, Plaintiff's brief next states that he is preparing an affidavit from a person who had personal knowledge that Nelson sold goats in Georgia. However, in the months since his response was due, no such affidavit has been filed. Thus, Plaintiff has not met his burden to meet the Defendant's evidence with evidence, and the Court does not find that Nelson has transacted business through the chat room e-mail.

6

Next, Plaintiff argues that Nelson has a personal membership with the AKGA, and that, through this membership, she has registered numerous goats with the AKGA. See Dkt. No. [65-2] at 4. As well, Plaintiff has attached a print-out from her website which lists "registered" kiko goats for sale by Lookout Point Ranch. This print-out states at the bottom that Lookout Point Ranch "is operated by Shade Tree, Inc." and also lists Mia Nelson as the "Business Manager."

In response, Nelson states that the membership is erroneously listed as a personal membership with the AKGA. On Lookout Point Ranch's application to the AKGA, which appears to have been faxed on January 19, 2005, Nelson listed the "Name" of the applicant as "Shade Tree, Inc. d/b/a Lookout Point Ranch contact: Mia Nelson." Dkt. No. [69-1] at 6. Additionally, on July 31, 2012–two months before Nelson filed her motion–Nelson again contacted the AKGA and asked them to correct the registration certification. Id. at 8. Thus, the Court does not find that Nelson registered goats with the AKGA, but rather, Shade Tree, Inc. did.

However, Plaintiff argues that Nelson, as Shade Tree, Inc. and Batten's agent, should be haled into court in Georgia for publishing the allegedly

7

fraudulent registration certificates.[4] In support of this argument, Plaintiff attaches an e-mail which was intended for Batten, but was accidentally sent to the Plaintiff by mistake. Nelson stated, "I want to assure you, Garrick, that it's actually a good thing if I'm sued by Culliford - because I do have good insurance $1 million [sic], and they will provide the legal defense. Because I am your agent [sic] I believe they will shield you as well." Dkt. No. [65-3] at 3. In response, Nelson affirms that she has actually never been Batten or Caprinex's agent; rather, she is not a lawyer and only used the term in a "colloquial" manner. Dkt. No. [69] at 4; Dkt. No. [69-1] at 4. However, Nelson admits that she is the President of Shade Tree, Inc. but alleges that the company is owned by Batten. Dkt. No. [69] at 4.

Taking the facts most favorable to the Plaintiff, the Court finds that Nelson was Batten's agent for this inquiry's purposes. Nelson admitted she was Batten's agent and a corporate officer of Shade Tree; thus, she will be held to that statement.

---

[4] Notably, because the defamation arises out of website conduct and does not arise out of goat registration, jurisdiction over the defamation claims could not be proper under subsection (1) as the defamation claims did not arise out of that transaction.

8

However, the Court does not find that, even as Shade Tree, Inc.'s agent, Nelson has transacted business here. In 2011, the Georgia Supreme Court explicitly rejected the "fiduciary shield" rule and held that corporate employees acting in their official capacities may be haled into Georgia court in their individual capacities for actions taken in their corporate capacities. Amerireach.com, LLC v. Walker, 719 S.E.2d 489, 494 (Ga. 2011). However, in order to be haled into court, those employees must have been the "primary *participants* in an alleged wrongdoing intentionally directed at a . . . resident" of the forum state. Id. (quoting Calder v. Jones, 465 U.S. 783, 789 (1984)) (emphasis in original). And, those contacts must still meet federal due process requirements. Amerireach.com, LLC, 719 S.E.2d at 495-96.

Here, Plaintiff does not allege that Nelson filed the registration certificates with the AKGA. Rather, he alleges that Batten obtained the fraudulent registrations, and Nelson only published copies of the certificates on www.caprinex.com. Dkt. No. [1] at ¶¶ 294, 343-346. The Court does not find that posting the fraudulent registrations was conduct that was either taken in Georgia or directed at Georgia. Rather, the fraudulent Georgia conduct occurred when Batten–not Nelson–fraudulently registered the kiko goats in Georgia. As

9

the Court finds that Nelson has not "purposefully done some act or consummated some transaction in" Georgia, Nelson cannot be sued here under subsection (1) of the long-arm statute.

B. Subsection (3)

Plaintiff argues that because Nelson operates and manages www.caprinex.com which advertises kiko goats for sale, and because Georgia has the largest number of kiko breeders, Nelson's website is "directed" at Georgia. This appears to be an argument under subsection (3) of the long-arm statute that Nelson has thus engaged in a "persistent course of conduct" by offering goats for sale to Georgia.

Unlike subsection (1), subsection (3) requires not only that Nelson transact business with the state, but that she "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state." In determining whether internet contacts are sufficient to establish general jurisdiction under this prong, Georgia courts have employed the Western District of Pennsylvania's analysis in Zippo Manufacturing Company v. Zippo Dot Com, 952 F. Supp. 1119 (W.D. Pa. 1997). Aero Toy, 631 S.E.2d at 740.

10

The Zippo court created the following sliding scale to analyze internet contacts:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

952 F. Supp. at 1124 (citations omitted).

Here, Nelson has produced evidence that neither she nor Shade Tree, Inc. do business via www.caprinex.com. Dkt. No. [69-1] at ¶¶ 21-23. While the site does have two links which allow a party to send an e-mail, there is no evidence that anyone has ever used this feature, and sending an e-mail alone does not create a business transaction. See Dkt. No. [69] at 8. As well, while Nelson affirms that an online auction was advertised once on the site, it never occurred. Id. In sum, Plaintiff has produced no evidence that the website was used to create contracts with potential Georgia buyers or that any exchange of

11

information has occurred on this site. Because the Court finds that jurisdiction is also not proper under subsection (3) as the website is passive, Nelson's Motion to Dismiss [61] is **GRANTED**.[5]

### III. Plaintiff's Contacts With The AKGA[6]

Defendants AKGA and Karen Brown next request that this Court order the Plaintiff not to contact the AKGA Board of Directors ("BOD") directly because while he is appearing *pro se* here, he has been admitted to the New Zealand bar as a barrister and solicitor. Thus, Defendants argue that, consistent with Georgia Rule of Professional Responsibility 4.2, Plaintiff should not contact the BOD directly without counsel's authorization. See GEORGIA RULES OF PROF'L CONDUCT R. 4.2(a) *available at* http://www.gabar.org/barrules/handbookdetail.cfm?what=rule&id=296 ("A lawyer who is representing a client in a matter shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other

---

[5]Because the Court finds that Plaintiff cannot prove jurisdiction under the long-arm statute, the Court need not decide whether due process would be satisfied in this case and whether Nelson was properly served.

[6]The Court again reminds the AKGA's counsel to serve the Plaintiff via U.S. Mail as previously instructed.

12

lawyer or is authorized to do so by law or court order."). Plaintiff argues that he should not be prevented from contacting the BOD because he is not admitted in the United States and does not currently hold a "practising certificate" in New Zealand; thus, he is not a lawyer.

After due consideration, the Court will **GRANT** Defendants' motion. Plaintiff is trained in the law, which is the factor that underlies Rule 4.2 and counsels against allowing a *pro se* attorney to contact a represented party directly. See In re Shaefer, 25 P.3d 191, 199 (Nev. 2001) ("The majority of courts considering the issue, however, have noted that the purposes served by the rule are equally present when the lawyer appears *pro se.* The lawyer still has an advantage over the average layperson, and the integrity of the relationship between the represented person and counsel is not entitled to less protection merely because the lawyer is appearing *pro se.* Consequently, these courts have enforced the rule in situations where a *pro se* lawyer makes direct contact with a represented party."). Thus, because Plaintiff has legal training, he should make all contact with the BOD through its counsel.

## IV. Conclusion

In light of the foregoing, Defendant Mia Nelson's Motion to Dismiss [61]

13

and Defendant American Kiko Goat Association ("AKGA") and Karen Brown's Motion for Order Directing Plaintiff to Cease Contact with the AKGA [68] are **GRANTED**. Plaintiff should make all contact with Karen Brown and the BOD through their counsel.

**SO ORDERED**, this __1st__ day of August, 2012.

_____
**RICHARD W. STORY**
United States District Judge

AO 72A
(Rev.8/82)